STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Ben Kernan      }
                                 }
                                 }   Docket No. 121-6-00 Vtec
                                 }
                                 }

DECISION and ORDER

Appellant Ben Kernan appealed from a decision of the then-Planning Commission of the City of Burlington, granting Appellee-Applicant Main Street Landing Company a Certificate of Appropriateness for a project at 50 Lake Street. Appellant is represented by Carl H. Lisman, Esq. and Christina A. Jensen, Esq.; Interested Person Jack Long, Esq. appeared and represented himself; Appellee-Applicant is represented by Gordon C. Gebauer, Esq.; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq.

In late 2000, the Court resolved a number of issues by motion, ruling that, as Appellant failed to appeal the Zoning Board of Adjustment's (ZBA) grant of approval of this project as a "major impact development" under Articles 3, 5, 13 and 17 of the Zoning Ordinance, various issues resolved by the ZBA's decision and not independently within the purview of the Planning Commission were precluded from consideration under 24 V.S.A. § 4472(d). The issues remaining for decision are Questions 1 and 3 of the Statement of Questions: whether the project complies with the requirements of § 6.1.11 of the Zoning Ordinance, and whether the notice sent pursuant to § 4.2.12 of the Zoning Ordinance to the College and Battery Condominium Association was sufficient notice to the owners of condominiums[1] in that building.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit alone, by agreement of the parties. Due to the heavy snow this past spring, elements of the site visit involving the views from the so-called lower plaza could not be completed until mid-April, 2001, as access to the lower plaza was impassible due to the volume of accumulated snow. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

The Burlington Department of Planning and Zoning sent a copy of the agenda for the Planning Commission's April 13 and April 27, 2000 meetings to the College and Battery Condominium Association, and also sent copies by first class mail to each owner of a condominium in the College and Battery building known to the Department. The Condominium Association's president attended the April 27, 2000 Planning Commission meeting and participated on behalf of the Association. The service list reflects that copies were sent both to Mr. Kernan and to Mr. Long, which copies were not returned as undeliverable. 24 V.S.A. § 4467 only requires published public notice of a hearing, plus actual notice to the applicant. Accordingly, regardless of whether it is good policy for the City's ordinance to provide for notice to a condominium

association rather than notice to each individual condominium owner, and regardless of whether other condominium owners did not get notice of this meeting, Appellant and Mr. Long received adequate notice of the proceedings.

College Street slopes steeply down from east to west from Battery Street to Lake Street. Appellee-Applicant Main Street Landing Company owns property at 50 Lake Street at the corner of Lake and College Streets. The easterly boundary of Appellee-Applicant's property is the westerly boundary of land owned by the City, in use by the City as a public park known as Battery Park Extension. The southernmost portion of the park land immediately to the east of Appellee-Applicant's property, between it and Battery Street, is known as the " lower plaza" of Battery Park Extension. Appellant and Mr. Long own condominiums in the building immediately across Battery Street from the lower plaza. The park land to the north of the lower plaza and adjacent to Appellee-Applicant's Lake Street parcel is currently a very steep slope, covered with scrub trees and brush, and unuseable by the public. The park land to the north of the lower plaza and adjacent to Battery Street contains a stairway to a walkway, open space and tree plantings extending towards the north along the remainder of Battery Park Extension. A raised berm between the traveled way of Battery Street itself, and the Battery Street Extension, to some extent blocks the westerly view from motorists traveling along Battery Street. From the remainder of Battery Park Extension and Battery Park, and especially at locations at Cherry Street, Pearl Street, and Battery Park, pedestrians can see spectacular views across Lake Champlain towards the Adirondack Mountains in New York State. There is pedestrian access to the lower plaza from the corner of Battery and College Streets, and from Battery Park Extension. The project proposal involves improvements to the City-owned park land, both at the lower plaza and to the north of the lower plaza, as well as construction on Appellee-Applicant's parcel.

At present the lower plaza is improved with an approximately four-foot high concrete wall, with benches facing inwards to the small open plaza. It is not plowed or shoveled in the winter, making access difficult in the winter in periods of substantial snow accumulation. Pedestrians standing facing west at the concrete wall may view the waterfront area and Lake Champlain through a screen of scrubby trees now growing on Appellee-Applicant's property. The view is partially blocked by the trees in the winter and is more screened in the summer when the trees have leaves. The view is not accessible to people from a seated position.

Lake Street is not parallel to Battery Street, so that rectangular building segments oriented parallel to Battery Street will form an angle with the Lake Street frontage. Appellee-Applicants propose to construct a 366-foot-long building on their property, to be set back 15 feet from the southerly (College Street) property line, to abut the easterly (lower plaza) park property line, to extend onto land at the northerly property line also controlled by Appellee-Applicant and used for parking behind the McKenzie building, with access from Lake Street. The building is proposed to have four distinct faces each meeting Lake Street at an angle, with associated balconies, porches, entrances, materials, and roof shapes, to give the building the appearance of a row of individual buildings as seen from Lake Street and from the lower plaza. The materials to be used for the building are brick and stone, with copper roofing, to be compatible in materials with the City's nineteenth-century architectural styles.

The building is proposed to have underground parking, and additional parking is available in surface lots owned by Appellee-Applicant immediately to the north of the project and across Lake Street to the west of the project.

The building is proposed to present three habitable stories at the southerly end and four habitable stories at the northerly end of the building, as viewed from the west or Lake Street side of the building. All floors will be accessible by elevator and all spaces are proposed to comply with the Americans with Disabilities Act (ADA). Entrances from Lake Street will be to the first floor of the building, and entrances from the lower plaza will be to the third floor of the building. An entrance from College Street appears from the plans to lead to the second floor on the south side. From the east side of the building, as seen from the lower plaza or from Appellant's building, the proposed building will appear as one or two stories, although the roof lines above the two building segments at the southerly end of the building will appear higher than a single story, in part due to their design and in part due to the fact that the floor elevation of the third floor is above that of the elevation of the lower plaza.

The building is proposed to contain an inn with dining facilities at the northerly end, a separate restaurant and pub at the southerly end, retail shops, a black box (stage drama) theater, a two-screen movie theater, a dance performance space, various publicly-accessible lobbies and balconies, and a publicly-accessible glass-roofed space referred to as a greenhouse.

The first floor along Lake Street is proposed to contain the following functions, from College Street (south) to north: a restaurant and pub, retail shops and public lobbies, and the inn's dining room, kitchen, registration desk, and public rooms. The first floor contains a central public lobby space entered from Lake Street. The east side of the first floor will be below grade.

The second floor along Lake Street is proposed to contain the following functions, from south to north: offices, support space for the black box theater, public lobbies, and guest rooms for the inn. The east side of the second floor will be below grade. The second floor has two publicly-accessible indoor areas on the west side of the building, one in the central lobby space and one in the smaller lobby, each with floor-to-ceiling glass walls providing views of Lake Champlain and the waterfront, and each with a balcony providing an outdoor view. The way in which the buildings are set back from one another, as well as the projecting side walls of the balconies, means that the views from the balconies and from the interior of the space will not provide a 180-degree view, but will instead be cut off to some extent from each viewing location, especially looking towards the north and northwest.

The third floor has access to the lower plaza from six entrances (two from the retail shops and four from the public spaces), and is proposed to contain the following functions, from south to north: a dance performance space, a glass-roofed publicly-accessible space referred to as the greenhouse, a black box theater, a two-screen movie theater, public lobbies, guest rooms for the inn, and small retail shops. The third floor contains three publicly-accessible spaces with floor-to-ceiling glass walls providing views of Lake Champlain and the waterfront: the central 40' x 52' public lobby space, the public lobby between the black box theater and the movie theater, and the 'greenhouse' space, each with a balcony. The way in which the buildings are set back from one another, as well as the projecting side walls of the balconies, means that the views from the

balconies and from the interior of the space will not provide a 180-degree view, but will instead be cut off to some extent from each viewing location, especially looking towards the north and northwest. The central lobby space, on the first, second and third floors, is proposed to be open year-round, 24-hours a day, with security services to be provided by Appellee-Applicant.

The fourth floor is accessible only from within the building. From south to north, it is proposed to contain the following functions: the roof structures and mechanical support functions for the dance studio, greenhouse space, black box theater and movie theater, and guest rooms (facing both east and west) and support services for the inn.

The corner of the roof over the dance and commercial space is a modified square peaked roof, presenting the appearance of a peaked roof from College Street or Lake Street. It is modified towards the greenhouse space to merge with the greenhouse roof. The walls of and the roof over the greenhouse are largely glass, and appears from the plans to be flat, with a central square peaked roof window. The roof over the black box theater is a mansard roof with an eyelid roof window on the east and west sides, and two apparently non-functional cupolas[2] as design elements at the easterly and westerly ends of the flat central portion of the mansard roof. The roof over the movie theater is a modified mansard roof, with sloping sections to the north and south, and a flat middle section, extending to Dutch-style rectangular gable ends[3] on the east and west extending above the roof peak and containing a clock on both the west and the east faces. The central public lobby between the movie theater and the inn has a mansard roof with a central peaked gable end on the east and west sides. The roof of the inn appears from the elevation drawings to be a shallow mansard roof with dormers above the top floor of inn rooms, although the roof plan was not provided for that portion of the building.

In connection with the project, Appellee-Applicant proposes to renovate the areas of Battery Park Extension, including the lower plaza, adjacent to the project site. The steep unusable slope will be filled in to create a grassy amphitheater adjacent to the northerly end of the building, suitable for outdoor performances. The lower plaza will be regraded and replanted with extensive landscaping, and will have new lighting[4], new benches, improved accessible walkways, and ADA-accessible access to the building entrances, including the central public lobby spaces.

Based on the Statement of Questions and earlier rulings in this appeal, to be approved the project must meet the following ten criteria of § 6.1.11[5].

Several of the subsections of § 6.1.11 are either inapplicable or have not been controverted by Appellant or Mr. Long. Subsections (h) and (i) are inapplicable to this project as it is not adjacent to the lake. Subsection (h) encourages projects to provide an area adjacent to the lake for a pedestrian access corridor. The project does provide for pedestrian access to the waterfront through the building and along College Street. Subsection (i) requires delivery vehicle access to respect the character of the existing or proposed pedestrian corridor. The proposal provides for delivery vehicle access directly from Lake Street under the building and does not cross an existing or proposed pedestrian corridor.

Subsection (e) requires the project to incorporate best available technologies and materials to maximize energy efficient design on site. Subsection (d) requires the proposed building to have

minimal adverse impact on solar access on adjacent land, to preserve and provide for active and passive solar utilization where possible. Appellee-Applicant proposes, both in general and specifically in this project, to construct and operate its buildings using the environmentally sensitive and energy efficient construction and operation techniques. No evidence was presented to the contrary. The proposed structure will use the best available technologies and materials to maximize energy efficient design. The building will not exceed four stories, and so need not be assessed for the environmental impacts of wind and energy consumption. The portion of the Battery Park Extension and lower plaza that would be shaded by the project is unlikely to be the subject of any active solar energy project. The so-called greenhouse space of the project represents an increase in space heated by passive solar energy compared to the solar energy effect on the lower plaza of the park as it now exists. That is, the building will only affect the lower plaza of the park by shading it from the western or afternoon sun. That solar gain is a detriment to the plaza's use in the summer, and is insufficient to allow the plaza to be used for outdoor uses in the winter. That solar gain would only benefit the users of the park in the mid-to-late fall and early-to-mid spring months when the added solar energy of the sun would make a difference to the users of the park. The loss of that solar effect on the plaza is more than offset by the added indoor spaces provided by the project for public use when the plaza is too cold to use.

The proposal retains traditional street patterns and the integrity of the city block. In fact, it extends the appearance of the traditional street pattern to a block that had not previously exhibited that pattern, and thereby complies with subsection (a). The proposal achieves design excellence in its use of materials, colors and scales similar to and harmonizing with those of nearby structures and neighborhoods, especially those to the south along Battery Street. It maintains an overall height, when seen from Lake Street, similar to that of nearby buildings, including the building in which Appellant's and Mr. Long's condominiums are located, and, when viewed from Battery Street, creates a sensitive transition to the lower buildings along Lake Street and the lakefront. It thereby complies with subsection (j) as a whole, and specifically with subsections (j)(2) and (3). Subsection (j)(1) is discussed below. The roof shapes of the several sections of the proposed building are designed to distinguish the segments of the building visually from one another. They will extend above the functional top story of the building farther than a flat roof would have extended. The proposed roofscape of the building must be analyzed against the requirements of subsections (f), (g), (b), (c), and (j)(1), which in this instance compete somewhat with one another.

Subsection (f) requires the building to be shaped to " reduce substantial impacts of shadows" on public plazas and other publicly accessible spaces, taking into account the amount of area shaded, the duration of the shading, and the importance of sunlight to the " utility of the type of open space" being shaded. Subsection (g) requires rooftop mechanical equipment to be either enclosed, or screened, or designed to be integrated with the design or materials of the building. Subsection (c) encourages alternatives to flat roofs, and requires rooftop forms to be carefully considered in determining whether the building is " thoughtfully shaped" in relationship to its position in the skyline[6] and whether it is " sympathetic" to its surrounding nineteenth-century vernacular architecture. Subsection (j)(1) requires the building to be compatible with the character of the City, and in particular to have a silhouette harmonious with the natural landforms and with the building patterns produced by height limits. Subsection (b) requires that the project " shall seek to preserve" views of the lake and the mountains across the lake, to

minimize obstruction and " extend access" to these views for adjacent sections of the community. Specifically, it states that no new structure " shall be permitted to obstruct views"of the lake or mountains " from nearby public ways"except to the extent that it extends access to the view " to significant sections of the community" or is for uses which have a clear public purpose.

The varied rooftop forms proposed for this building accomplish the design goals of subsections (c), (g), and (j)(1) in that they avoid the appearance of a flat roof, potentially screen the mechanical systems such as[7] heating and cooling and elevators, and create a building sympathetic to the surrounding nineteenth-century vernacular architecture, thoughtfully shaped like a row of different buildings, blending into its position in the city with its roof forms seen from the lake against the hillside of Battery Park Extension and against the building in which Appellant and Mr. Long reside. With respect to subsection (c), however, depending upon the reflectivity of the glass used in the greenhouse walls and roof window, it is possible that the greenhouse would create an obtrusive bright reflection within the skyline of the City in bright sunshine from the west. Similarly, with respect to the views of the lake from the City, overly reflective glass could create an obtrusive reflection when viewed from the east. Any approval should therefore be subject to ascertaining that the materials used for the greenhouse or any other rooftop windows will not create undue glare within the view from either direction.

Unfortunately, the very roof forms which create this harmonious design also create shading for some portion of Battery Park Extension, and the building will obstruct some existing views of the lake and mountains from nearby public ways in Battery Park Extension[8] and its lower plaza. They will not obstruct existing views of the lake and mountains from pedestrians on Battery Street, or from motorists on Battery Street, as a berm along Battery Street at that location already limits pedestrians' and motorists' views across the Lake as does the westerly wall of the lower plaza, and existing vegetation. Therefore, under subsection (b) we must determine whether the obstruction of the view has been minimized, consistent with the other design goals of § 6.1.11, and whether access to the view is extended by the design of this project to significant sections of the community. Because the proposal is set back fifteen feet from College Street, it does meet subsection (b)' s requirement of protecting the view corridor down College Street from the rest of the City.

The projecting roofscape similarly will create shadows not previously affecting portions of the Battery Park Extension and the lower plaza. Under subsection (f) we must determine whether the impact of the shadow has been minimized, taking into account the importance of sunlight to the utility of the open space being shadowed.

By creation of the interior public spaces with indoor and balcony views towards the west, and by making some of that publicly-accessible space available 24-hours a day year-round, access to the view has been extended by the project to significant sections of the community. The view has been extended particularly to those who have difficulty in access to Battery Park Extension or the lower plaza, or who cannot stand at the western wall of the lower plaza to perceive the view, or who are unable to tolerate outdoor exposure in the colder seasons of the year. It is true that the angle of the view will be less extensive than that available higher up in Battery Park Extension, but those panoramic views are unaffected by this project, and the view from the lower plaza was already compromised by the wall and the vegetation.

The analysis regarding the shadowing effect of the building is similar to that of the potential for passive solar utilization. The building will only affect the lower plaza and the newly-useable amphitheater area of the park by shading it from the western or afternoon sun. It will not have a shadowing effect on the higher elevation portions of Battery Park Extension above the stairway to the tree-lined walkway The shadowing will enhance the plaza's and amphitheater's use in the summer, and is insufficient to adversely affect the potential for outdoor uses in the winter, when it is already too cold to use. The shadowing in the mid-to-late fall and early-to-mid spring months is more than offset by the added indoor spaces provided by the project for public use when the plaza is too cold to use, and by the creation of newly-useable space in the amphitheater.

However, without redesign of the extensions of the roofscape above the black box theater and the cinema, the Court cannot find that the obstruction to the view has been minimized, as required by subsection (b). That is, the roof elements that obstruct the view must be shown to be the minimum necessary to accomplish the other goals of § 6.1.11, bearing in mind that Appellee-Applicants have the right to build on their own property to the extent allowed under the height limitations, coverage limitations, and other limitations of the zoning ordinance. Evidence was not presented from which the Court can determine whether the roof elements that obstruct the view are the minimum necessary to accomplish the other design goals. In particular, the elements that obtrude most into the view from the lower plaza, that is, the roof and cupolas above the black box theater and the square gable end extensions above the cinema theater[9], have not been shown to be necessary at that height to accomplish the design goals making the building segments distinct from one another and compatible with the City's nineteenth-century vernacular architecture, in achieving design excellence, and in concealing necessary mechanical roof structures.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that judgment is entered in favor of Appellee-Applicant on the project plans as submitted in evidence, and the application is approved under § 6.1.11, with the following conditions:

1. Appellee-Applicant shall ensure that the materials used for the greenhouse or any other rooftop windows will not create obtrusive glare within the view from either direction.

2. Appellee-Applicant shall reduce the roofline extensions presented by the roof and cupolas above the black box theater and by the square gable end extensions above the cinema theater, to the minimum necessary to accomplish the design needs of the project in making the building segments distinct from one another and compatible with the City's nineteenth-century vernacular architecture, in achieving design excellence, and in concealing[10] necessary mechanical structures within the roof.

Dated at Barre, Vermont, this 20th day of August, 2001.

_____
Merideth Wright
Environmental Judge


**Footnotes**

1.    In the circumstances of this case, the Court can only determine whether Appellant and Mr. Long received actual adequate notice of the Planning Commission proceedings on this application. As to any other condominium owner who is not here complaining of lack of notice, this Court's ruling on the issue would be an advisory opinion.

2.    Section 5.3.13(d) provides that if ornamental and symbolic features, including cupolas and belfries, are not used for human occupation and do not occupy more than 10% of the total roof area, they are exempt from height limitations, although they are still subject to design review.

3.    See previous footnote.

4.    The proposed fixtures have been approved by the City's Department of Parks and Recreation and are those used in other city parks, including City Hall Park.

5.    The then-ZBA action on this project was not appealed; therefore we do not address whether the project meets or fails to meet the height limitations in §5.3.18, as height is defined and measured in § 5.3.19. Nor do we address whether the project meets the design review standards of §6.1.10, as previously ruled in this appeal.

6.    That is, the view of the city from the lake or lake shore, as contrasted with subsection (b) which addresses the view of the lake from the city.

7.    Appellee-Applicant did not specify which mechanical systems were contained in which portions of the roof structures.

8.    Battery Park Extension itself slopes upwards from College Street towards Cherry and Pearl Streets, so that the building height will appear lower and less obtrusive as the viewer moves towards the north along Battery Park Extension.

9.    Mislabled on the east elevation as "The Shops" at its entrance.

10.    As evidence was not presented as to the content of the space within the roof above the black box theater, the Court cannot itself determine whether the space is the minimum necessary space for the function and design of that theater. It is possible that the space within the roof as designed is necessary to contain the mechanical "fly" space for the theater, in which case only the cupolas need be considered in adjusting this design element.